UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TARA GARROW,
f/k/a TARA CLEMENS,

                 Plaintiff,               Civil Action No. 15-14058
                                                Honorable Sean F. Cox
                                                Magistrate Judge David R. Grand

v.

JPMORGAN CHASE BANK, N.A.,

                 Defendant.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S
MOTION TO DISMISS THE COMPLAINT [5]**

**I.     RECOMMENDATION**

      Plaintiff Tara Garrow ("Garrow") commenced this action against JPMorgan Chase Bank,

N.A. ("JPM") seeking to invalidate the sheriff's sale of her property, to compel JPM to negotiate

a loan modification, and money damages. [1].  Before the Court is JPM's motion to dismiss the

complaint. [5].  Garrow filed a response, to which JPM filed a reply. [7, 8].  The motion has been

referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

[6].  The Court conducted a hearing on this matter on April 4, 2016.  For the following reasons,

the Court RECOMMENDS that JPM's motion [5] be GRANTED.

**II.     REPORT**

      **A.     Background**

      On November 30, 2009, Garrow and her then husband, Richard Clemens ("Clemens"),

executed a warranty deed for their property located at 413 Holland in Flushing, Michigan (the

"property"). [1, Ex. A at Pg ID 37].[1]   On October 22, 2010, Garrow and Clemens executed a

mortgage loan with Cason Home Loans ("Cason") for $104,000. [5, Ex. A at Pg ID 150].   This

mortgage was secured by the same property. [*Id.* at Pg ID 149].   The mortgage listed Mortgage

Electronic Registration Systems, Inc. ("MERS") as Cason's nominee and indicated that MERS

would act as the mortgagee on behalf of Cason and its successors and assigns. [*Id.*].   The

mortgage was duly recorded in the Genesee County Register of Deeds and provided that the

mortgagee could sell the property in the event of a default on the mortgage. [*Id.* at Pg ID 164].

MERS assigned the mortgage to JPM on November 19, 2014. [*Id.*, Ex. B].   The assignment was

duly recorded in the Genesee County Register of Deeds on November 25, 2014. [*Id.*].[2]

        After scheduled loan payments were not made, JPM mailed a notice of default dated

---

[1] A reviewing court's consideration of a motion to dismiss under Rule 12(b)(6) is ordinarily confined to the pleadings.  *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008).  Thus, assessment of the complaint's facial sufficiency ordinarily must be undertaken without resort to matters outside the pleadings.  *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).  However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss."  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir.2007) (citing Fed.R.Civ.P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n. 1 (6th Cir. 2010).  Moreover, if a document is not attached to a complaint or answer, but "is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."  *Commercial Money Ctr.*, 508 F.3d at 335–36.  Similarly, where the plaintiff's pleadings do not refer directly to a given document, if that document governs the plaintiff's rights and is necessarily incorporated by reference, then the court may consider it without converting the motion into one for summary judgment.  *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (holding that plan documents could be incorporated without converting the motion to one for summary judgment even though the complaint referred only to the "plan" and not the accompanying documents).  In addition, "[a] court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment."  *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir.2010) (quoting *Commercial Money Ctr.*, 508 F.3d at 335–36).  All of the documents referenced herein satisfy these standards.

[2] While the November 19, 2014 mortgage assignment lists "Richard Clemens, A Married Man and Tara Clemens, His Wife" as the mortgagors, the caption in this case reflects that Garrow has since changed her last name. [5, Ex. B].  It is unclear whether Garrow and Clemens are currently divorced and whether Clemens still resides at the property.

January 8, 2015, to the property.[3] [1 at ¶ 16; 5, Ex. D at Pg IDS 178-83]. The default was not cured, and JPM commenced foreclosure proceedings by advertisement. [5, Ex. C at Pg IDs 172-73]. On April 22, 2015, JPM purchased the property at a sheriff's sale in the amount of $82,500. [*Id.* at Pg IDs 170-71]. The sheriff's deed was duly recorded in the Genesee County Register of Deeds on May 7, 2015. [*Id.* at Pg ID 170]. Garrow failed to redeem the property within the six-month statutory redemption period, which expired on October 23, 2015. [*Id.* at Pg ID 174].

Garrow filed the instant complaint on October 28, 2015, in Genesee County Circuit Court asserting causes of action for: (I) wrongful foreclosure under Michigan law, the Real Estate Settlement Procedures Act ("RESPA"), and the Truth in Lending Act ("TILA"); (II) breach of contract; (III) fraudulent representation; (IV) slander of title; (V) "declaratory relief/foreclosure barred by unclean hands"; (VI) injunctive relief; and (VII) "request for equitable mortgage and/or for conversion to judicial foreclosure under MCL 600.3101, *et seq.*" [1, Ex. A]. She later obtained a temporary restraining order ("TRO") on November 2, 2015 "staying the expiration of the redemption period . . ." [1, Ex. C at Pg ID 88; *see* Ex. A]. The state court set the TRO for a show cause hearing on November 23, 2015.[4] [1, Ex. C at Pg ID 88]. In the interim, JPM timely

---

[3] Garrow's counsel acknowledged at the April 4, 2016 hearing that JPM did, in fact, mail the January 8, 2015 notice of default to the property. The parties agree that the notice of default was appropriately addressed to Clemens since only his signature appeared on the note. Although the parties did not include a copy of the note in the record, it is undisputed that Garrow never signed it.

[4] Under Michigan and federal law, the TRO expired on November 16, 2015, fourteen days after it was issued. *See* MCR 3.310(B)(3) ("a temporary restraining order granted without notice expires by its terms within such time after entry, not to exceed 14 days"); *see also* Fed. R. Civ. P. 65(b)(2) (a TRO "expires at the time after entry – not to exceed 14 days – that the court sets"); *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439-40 (1974) ("An *ex parte* temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by [Fed. R. Civ. P.] 65(b), measured from the date of removal."); *Wargelin*

removed the matter to the United States District Court for the Eastern District of Michigan on November 19, 2015. [1].

In its motion to dismiss the complaint, JPM argues that: (1) Garrow does not allege sufficient fraud or irregularities in the foreclosure process to invalidate the sheriff's sale; (2) Garrow fails to adequately allege that she was prejudiced by the asserted fraud or irregularities; (3) Garrow cannot invalidate the sheriff's sale under RESPA because the statute does not provide for equitable remedies; (4) Garrow is not entitled to any relief under RESPA because she did not allege that she suffered actual damages resulting from JPM's purported statutory violation; (5) the breach of contract claim lacks merit because JPM complied with the mortgage terms by sending Garrow the January 8, 2015 notice of default prior to commencing foreclosure proceedings; (6) to the extent Garrow alleges that JPM breached the implied covenant of good faith and fair dealing, her claim lacks merit because Michigan law does not recognize this cause of action; (7) Garrow fails to plead her fraud claim with the requisite particularity under Fed. R. Civ. P. 9(b); (8) the slander of title claim should be dismissed because there are no allegations in the complaint supporting the elements of falsity or malice; (9) Garrow may not rely on the unclean-hands doctrine to obtain a declaratory judgment; (10) Garrow is not entitled to injunctive relief because she failed to demonstrate a likelihood of success on the merits and irreparable harm; and (11) Garrow's request for an equitable mortgage is futile because a properly executed mortgage already exists.

### B.    Legal Standard

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

*v. Bank of Am.*, No. 12-15003, 2013 U.S. Dist. LEXIS 146326, at *9-10 (E.D. Mich. Oct. 10, 2013) (same).

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This tenet, however, "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009).  Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

5

### B.     Analysis

####     1.  *Wrongful Foreclosure*

Although Garrow broadly denominates her first cause of action as a claim for "wrongful foreclosure," she actually alleges that JPM violated several state and federal laws – Mich. Comp. Laws § 600.3201, *et seq.*, RESPA, and TILA.   According to Garrow, JPM ran afoul of these statutes by: (1) failing to provide her with a notice of default; (2) initiating foreclosure proceedings while Garrow was allegedly being considered for foreclosure alternatives; (3) failing to inform Garrow of all of the foreclosure alternatives available to her; (4) declining to provide Garrow with access to loan servicing personnel; (5) failing to properly calculate the amount claimed to be due on the date of the notice of foreclosure; (6) failing to notify Garrow that Cason had assigned her mortgage to JPM; and (7) failing to inform Garrow that loan servicer had been changed. [1, Ex. A at ¶¶ 47-80].

####     (a)     Michigan Law

In Michigan, non-judicial foreclosures, or foreclosures by advertisement, are governed by statute.  *See* Mich. Comp. Laws § 600.3204; *Senters v. Ottawa Sav. Bank, FSB*, 443 Mich. 45, 50 (1993).   Statutory authority not only governs the process for foreclosure, but also the parties' rights subsequent to the sale of the property. *See Dingman v. OneWest Bank, FSB*, No. 11-15706, 2012 U.S. Dist. LEXIS 34668, at *9 (E.D. Mich. Mar. 14, 2012); *see also Conlin v. Mortgage Elec. Registration Sys.*, 714 F.3d 355, 359 (6th Cir. 2013) (citation omitted) ("While the statutory scheme provides certain steps that the mortgagee must go through in order to validly foreclose . . . it also controls the rights of both the mortgagee and the mortgagor once the sale is completed.").   A mortgagor generally has six months after the date of the sheriff's sale to redeem his property.   Mich. Comp. Laws § 600.3240(8).   After that point (or whatever redemption

6

period applies), the mortgagor's "right, title, and interest in and to the property" are extinguished. *Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187 (1942); *see also Conlin*, 714 F.3d at 359; Mich. Comp. Laws § 600.3236. Michigan courts have held that once the redemption period has expired, a property owner may challenge a foreclosure sale only by making "a clear showing of fraud, or irregularity." *Schulthies v. Barron*, 16 Mich. App. 246, 248 (1969). Furthermore, such fraud or irregularity "must relate to the foreclosure procedure itself." *El-Seblani v. Indymac Mortg. Servs.*, No. 12-1046, 2013 U.S. App. LEXIS 635, *10 (6th Cir. Jan. 7, 2013). This standard is a high one. *Conlin*, 714 F.3d at 360. "The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside" after the redemption period expires. *Sweet Air Inv., Inc. v. Kenney*, 275 Mich. App. 492, 497 (2007) (quoting *United States v. Garno*, 974 F.Supp. 628, 633 (E.D. Mich. 1997) (citing *Detroit Trust Co. v. Agozzinio*, 280 Mich. 402, 405-06 (1937) and *Calaveras Timber Co. v. Michigan Trust Co.*, 278 Mich. 445, 450 (1936)).

As the Sixth Circuit recently stated, "[w]hether the failure to make this showing is best classified as a standing issue[5] or as a merits determination, one thing is clear: a plaintiff-mortgagor must meet this 'high standard' in order to have a foreclosure set aside after the lapse

---

[5] In a number of fairly recent, although unpublished cases, the Sixth Circuit has found that a mortgagor's ability to challenge a foreclosure sale after the expiration of the redemption period is not a "standing" issue *per se*. *See, e.g., El-Seblani*, 2013 U.S. App. LEXIS 635; *Houston v. U.S. Bank Home Mortg. Wisc. Servicing*, No. 11-2444, 2012 U.S. App. LEXIS 24196 (6th Cir. Nov. 20, 2012); *Munaco v. Bank of Am.*, No. 12-1325, 2013 U.S. App. LEXIS 2322, *6 n.2 (6th Cir. Jan. 31, 2013); *see also Pettey v. CitiMortgage, Inc.*, No. 11-13779, 2012 U.S. Dist. LEXIS 117932, at *13 (E.D. Mich. Aug. 21, 2012) (finding "no legal merit" to the argument that a mortgagor who loses his legal interest in a property because the redemption period has expired has no "standing" to bring an Article III challenge to pursue an interest in the foreclosed property). Accordingly, the question here is not whether Garrow has "standing" to challenge the foreclosure sale, but rather whether the factual allegations contained in her complaint are sufficient "to meet the high standard imposed by Michigan law on claims to set aside a foreclosure sale." *El-Seblani*, 2013 U.S. App. LEXIS 635 at *12. For the reasons discussed herein, the complaint's allegations clearly fail to meet that standard.

of the statutory redemption period." *Conlin*, 714 F.3d at 359-60 (6th Cir. 2013). In this case, there is no dispute that JPM purchased the property on April 22, 2015 [5, Ex. C]; that the redemption period expired six months later, on October 23, 2015; and that Garrow filed this lawsuit after that expiration date, on October 28, 2015 [1, Ex. A]. Thus, to the extent Garrow's complaint ultimately seeks to challenge any portion of the foreclosure proceeding, she can only do so by making a strong showing of fraud or irregularity. None of the allegations in her complaint meet this standard.

To begin with, to the extent Garrow contends that the foreclosure process was procured through fraud or irregularity because JPM never sent her a notice of default pursuant to the mortgage, the record disproves her premise. JPM produced a copy of the January 8, 2015 notice of default, which clearly stated that the loan was in default, specified the appropriate loan balance, and contained an explicit warning that the loan payments would become immediately due and payable in the event the default was not cured by February 12, 2015. [5, Ex. D at Pg IDs 178-79]. As noted above, Garrow's counsel conceded at the April 4, 2016 hearing that JPM did, in fact, mail the notice to the property.

But even assuming Garrow never received the notice of default, her wrongful foreclosure claim would still be subject to dismissal because she was not prejudiced by this omission. *See Goodman v. CitiMortgage, Inc.*, No. 15-12456, 2015 U.S. Dist. LEXIS 143567, at *8 (E.D. Mich. Oct. 22, 2015) ("Even assuming, as the Court must, that this was true, a defect in notice 'is only actionable upon a showing of actual prejudice' to the mortgagor."); *Fawcett v. Wells*, No. 13-10591, 2013 U.S. Dist. LEXIS 167583, at *3 (E.D. Mich. Nov. 26, 2013) (same). Garrow acknowledged in her complaint that she "began worrying that [JPM] would start to pursue default remedies" only after she failed to make her loan payments, [1, Ex. A at Pg ID 16], and

that she later participated in a series of discussions with JPM to modify the loan. [*Id.* at Pg IDs 18-19]. Thus, Garrow admittedly knew that her nonpayment breached the terms of the mortgage and would eventually result in default.

Furthermore, JPM submitted the affidavits of posting and publication, demonstrating its compliance with Michigan's notice of foreclosure procedures. [5, Ex. C at Pg ID 172-73]. While Garrow asserts that she never saw these notices, "Michigan law does not dictate that mortgagors have actual notice, only that notice procedures are followed." *Upshaw v. Green Tree Servicing LLC*, No. 15-13866, 2015 U.S. Dist. LEXIS 169956, at *8 (E.D. Mich. Dec. 21, 2015); *see also* Mich. Comp. Laws § 600.3264 ("such original affidavits, the record thereof, and certified copies of such record, shall be presumptive evidence of the facts therein contained."). Garrow is also not entitled to relief based on her theory that JPM failed to "properly calculate the amount claimed to be due on the date of the notice of foreclosure." [1, Ex. A at ¶ 72]. Addressing an identical argument made in *Goodman v. CitiMortgage, Inc.*, No. 15-12456, 2015 U.S. Dist. LEXIS 143567, at *9 (E.D. Mich. Oct. 22, 2015), the court recognized that "[e]ven assuming, arguendo, that this was a cognizable claim, Plaintiffs fail to assert even the most basic facts suggesting a right to relief; namely, (1) the outstanding balance reported on the notice of foreclosure, and (2) the balance according to their records." The court further noted, "there is no indication how this purported discrepancy has impaired Plaintiffs' ability to challenge the underlying foreclosure." *Id.* at *9-10. Since Garrow's complaint is essentially a carbon copy of the one her counsel filed in *Goodman*, it suffers from the same deficiencies.

Garrow further contends that JPM engaged in fraud and irregularities by commencing foreclosure proceedings while the parties discussed a potential loan modification. But this allegation gets her nowhere as it solely asserts an irregularity in the *loan modification process*,

not the *foreclosure process*. *See Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 294 (6th Cir. 2015) (allegation that mortgagor proceeded with foreclosure, despite its letter to mortgagee that her home would not be foreclosed during the evaluation of her loan modification materials, did not constitute an irregularity in the foreclosure process); *Williams v. Pledged Property II, LLC*, 508 F. App'x 465, 468 (6th Cir. 2012) ("Williams's claim of fraud relies on oral assurances during a negotiation to change the terms of the contract.  Despite the fact that the negotiations may have taken place during the foreclosure process, these negotiations remained separate from the foreclosure process itself.").

Insofar as Garrow alleges that JPM led her to believe that she was eligible for a loan modification, this part of her wrongful foreclosure claim is barred by the Statute of Frauds because she does not allege that JPM's assurances were made in a signed writing.  Mich. Comp. Laws § 566.132(2) states that:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>
> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
>
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.[6]

Pursuant to section 566.132(2), Michigan courts have held that "any agreement to modify a loan, waive a loan provision, or to provide any other financial accommodation must be in writing and

---

[6] JPM is a "financial institution" for purposes of the Statute of Frauds because it is an affiliate of a nationally chartered bank.  *See* Mich. Comp. Laws § 566.132(3).

signed by the financial institution." *Frank v. Mortgage Elec. Registration*, No. 14-13518, 2014 U.S. Dist. LEXIS 167934, at *9 (E.D. Mich. Dec. 4, 2014) (citing *Crown Technology Park v. D&N Bank, FSB*, 242 Mich. App. 538, 549 (2000)).  Again, because Garrow does not allege that JPM executed a signed written promise to modify the mortgage or the note, this portion of her wrongful foreclosure claim is barred by the Statute of Frauds.

(b)     RESPA

Garrow maintains that JPM violated RESPA regulation 12 C.F.R. § 1024.41 ("Section 1024.41") by "pursuing loss mitigation options contemporaneously with active foreclosure proceedings." [1, Ex. A at ¶ 61].  The Court finds this argument unpersuasive as well.

First, as discussed above, this aspect of Garrow's wrongful foreclosure claim constitutes an irregularity in the loan modification process rather than the foreclosure process.  *See Campbell*, 611 F. App'x at 294; *Williams*, 508 F. App'x at 468.  Second, "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." 12 C.F.R. § 1024.41(a).  Third, Garrow seeks injunctive relief in the form of rescission of the sheriff's sale, which is a remedy that is unavailable under both RESPA and Section 1024.41. *Id.* ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."); *see also* 12 U.S.C. § 2605(f) (exclusively authorizing monetary relief to individual borrowers).  And fourth, Garrow has not alleged that she would have qualified for a loan modification had JPM evaluated her application. *See Goodman*, 2015 U.S. Dist. LEXIS 143567, at *9 (Plaintiffs have "not demonstrated or even alleged that [they] would have been eligible for a loan modification if [they] had been evaluated . . .").

Garrow likewise asserts that JPM violated RESPA by failing to notify her "in writing of any assignment, sale, or transfer of the servicing of the loan to any other person" as required

under 12 U.S.C. § 2605(b)(1) ("Section 2650(b)(1)").  The problem with this aspect of Garrow's wrongful foreclosure claim is that she does not allege how the purported RESPA violation "prejudiced [her] in the foreclosure process." *Upshaw*, 2015 U.S. Dist. LEXIS 169956, at *10. Nor does Garrow possess the requisite standing to seek redress under Section 2605(b)(1) as she did not sign the note. *See Johnson v. Ocwen Loan Servicing*, 374 F. App'x 868, 874 (11th Cir. 2010) (dismissing complaint where plaintiff "was not a party to the [underlying] loan and, therefore, lacked standing to bring any claim based on that loan."); *Leblow v. BAC Home Loans Servicing LP*, No. 12-246, 2013 U.S. Dist. LEXIS 74616, at *16-17 (W.D.N.C. May 3, 2013) (collecting cases); *Britt v. Flagstar Bank*, No. 10-14463, 2011 U.S. Dist. LEXIS 150463, at *11-12 (E.D. Mich. Oct. 27, 2011) (holding that "[b]ecause Plaintiff was not a party to the mortgage or note, Plaintiff cannot assert RESPA" claims).  Thus, Garrow has not demonstrated any entitled to relief under Sections 1024.41 or 2605(b)(1).

(c)     TILA

At the April 4, 2016 hearing, Garrow's counsel waived her argument that JPM violated TILA regulation 12 C.F.R. § 226.39 because the bank failed to notify her that it had assumed ownership "of [the] existing mortgage loan." 12 C.F.R. § 226.39(a)(1).  In any event, this contention is undermined by Garrow's concession that she participated in loan modification discussions with JPM as late as March 2015 and, therefore, must have known that JPM was the new mortgage owner. [1, Ex. A at ¶¶ 42, 67].  In addition, Garrow does not have standing to pursue a claim under TILA because she was not a party to the note. *See Britt v. Flagstar Bank*, 2011 U.S. Dist. LEXIS 150463, at *11-12 (holding that "[b]ecause Plaintiff was not a party to the mortgage or note, Plaintiff cannot assert . . . TILA claims.").

2.   *Breach of Contract*

Garrow contends that JPM breached the mortgage and the implied covenant of good faith and fair dealing by: (1) failing to send her a notice containing all of the components of Paragraph 22 of the mortgage; (2) "disingenuously negotiating loss mitigation assistance"; and (3) "misleading [her] about approval and extension of loss mitigation assistance as an alternative to foreclosure." [1, Ex. A at ¶ 87].

To establish a breach of contract under Michigan law, the non-breaching party must show: "(1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 296 Mich. App. 56, 71 (2012).

As a preliminary matter, Garrow's argument that JPM breached Paragraph 22 of the mortgage by failing to provide her with a notice of default is unavailing because her counsel already conceded at the hearing that JPM mailed a copy of the January 8, 2015 notice of default to the property.   Additionally, Garrow cannot rely upon the premise that JPM violated the implied covenant of good faith and fair dealing because Michigan law does not recognize this cause of action.  *Fodale v. Waste Mgmt. of Mich., Inc.*, 271 Mich. App. 11, 35 (2006).  This is especially the case where, as here, "[the] parties have unmistakably expressed their respective rights" in a written agreement.  *Cheesewright v. Bank of Am., N.A.*, No. 11-15631, 2013 U.S. Dist. LEXIS 23672, at *13 (E.D. Mich. Feb. 21, 2013) (quoting *Cutrone v. Daimler-Chrysler Motors Co., LLC*, 160 F. App'x 215, 220 (3d Cir. 2005).  Nor is there any exception to this rule where a financial institution is accused of "disingenuously negotiating loss mitigation assistance" with a homeowner.  *Servantes v. Caliber Home Loans, Inc.*, No. 14-13324, 2014 U.S. Dist. LEXIS 170667, at *1-2 (E.D. Mich. Dec. 10, 2014).

13

Finally, even assuming JPM misled Garrow about the approval and extension of loss mitigation assistance as an alternative to foreclosure, a breach of contract claim based on these representations would be barred by the Statute of Frauds since Garrow does not allege that JPM made a signed written promise to modify the mortgage or the underlying note. *See* Mich. Comp. Laws § 566.132(2). As a result, Garrow's breach of contract claim should be dismissed.

### 3. *Fraudulent Misrepresentation*

Next, Garrow alleges that JPM made false representations that "it would not begin foreclosure proceedings while the parties were actively pursuing loan modification or other financial assistance options." [1, Ex. A at ¶ 89].

"In alleging fraud or mistake," Fed. R. Civ. P. 9(b) provides that, "a party must state with particularity the circumstances constituting fraud or mistake." Interpreting this requirement, the Sixth Circuit has held that complaints alleging fraud must specify "the time, place, and content of the alleged misrepresentation on which [the deceived party] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 509 (6th Cir. 2007); *see also Elsheick v. Select Portfolio Servicing, Inc.*, 566 F. App'x 492, 498 (6th Cir. 2014).

Under Michigan law, a fraud claim must contain allegations: "(1) that defendants made a material misrepresentation; (2) that it was false; (3) that when they made it they knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that they made it with the intention that it should be acted upon by plaintiffs; (5) that plaintiffs acted in reliance upon it; and (6) that they thereby suffered injury." *Frank*, 2014 U.S. Dist. LEXIS 167934, at *12 (citing *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976)).

14

In this case, the complaint does not indicate who told Garrow that JPM would refrain from commencing foreclosure proceedings while the parties allegedly discussed a loan modification and when and where those representations were made. Only in her response does Garrow attempt to elaborate upon this claim by stating that:

> Defendant, with an intention to defraud Plaintiff, made material misrepresentations that the loss mitigation assistance as an alternative to foreclosure was available to Plaintiff to save her home from foreclosure. Defendant had knowledge that these representations were false. Further, Defendant induced Plaintiff to believe that her loan modification application was under consideration and relying on Defendant's misrepresentation Plaintiff refrained from defending against the foreclosure.

[7 at Pg ID 249-50]. However, without specifically identifying who perpetrated the alleged fraud, or where and when the above misrepresentations occurred, these supplemental allegations cannot satisfy the elements of fraud in light of Rule 9(b)'s particularity requirement.

Moreover, similar to Garrow's other claims, the Statute of Frauds equally applies to her fraudulent misrepresentation claim because M.C.L. § 566.132(2) requires a signed writing to enforce a "promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation." *Frank*, 2014 U.S. Dist. LEXIS 167934, at *13 ("like plaintiffs' breach of contract claim, any misrepresentation arising out of an oral promise of a loan modification is barred by the statute of frauds as such promises must be in writing."); *see also Polidori v. Bank of Am., N.A.*, 977 F. Supp. 2d 754, 763 (E.D. Mich. 2013) (dismissing fraud claim based on an alleged oral promise to modify a loan because the plaintiff "failed to plead facts or present evidence tending to show that BANA signed a loan modification document embodying the oral promise alleged"). Thus, even if JPM orally misrepresented that it would modify the mortgage or note, such representations are barred by the Statute of Frauds. *See* M.C.L. § 566.132(2).

15

To bolster her claim that JPM engaged in fraudulent conduct, Garrow cites to *Jarchow v. Citimortgage, Inc.*, No. 13-11925, 2014 U.S. Dist. LEXIS 61095 (E.D. Mich. May 2, 2014). Her reliance on this case is misplaced. First and foremost, *Jarchow* did not involve a claim for fraudulent misrepresentation. Second, the district court in *Jarchow* primarily discussed whether the violation of a since-repealed statute, M.C.L. § 600.3205a, constituted fraud or irregularity in the foreclosure process sufficient to invalidate the sheriff's sale. That statute formerly required mortgage holders to send borrowers a letter notifying them of their option to be considered for a possible loan modification. Since the sheriff's sale in the instant case occurred in 2015, nearly two years after the legislature repealed M.C.L. § 600.3205a, *Jarchow* has no bearing on the disposition of Garrow's fraudulent misrepresentation claim. Accordingly, this cause of action fails to state a plausible claim for relief and should be dismissed.

4. *Slander of Title*

Garrow argues, in effect, that JPM slandered her title to the property by commencing the foreclosure proceedings and purchasing the property at the sheriff's sale. [1, Ex. A at ¶¶ 95-98].

Michigan slander of title claims derive from both common law and statutory sources. *See* Mich. Comp. Laws § 565.109. "A plaintiff must prove the same three elements for both a common-law slander of title claim and a claim under Michigan Compiled Laws § 565.109: 'falsity, malice, and special damages.'" *Keyes v. Deutsche Bank Nat. Trust Co.*, 921 F. Supp. 2d 749, 762 (E.D. Mich. 2013) (quotations and citations omitted). Here, Garrow's complaint contains no facts regarding the elements of falsity and malice and, thus, her slander of title claim must be dismissed. *See Stanton v. Dachille*, 186 Mich. App. 247, 463 (1990) (to demonstrate malice "the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury.").

16

        5.      *Declaratory Relief*

Garrow seeks a declaratory judgment invalidating the sheriff's sale on the ground that JPM commenced foreclosure proceedings "in bad faith or with unclean hands." [1, Ex. A at ¶¶ 101-02]. This request for declaratory relief is defective in two respects.

First, it is well-settled that "[d]eclaratory relief is a remedy, . . . not a claim." *McCann v. U.S. Bank, N.A.*, 873 F. Supp. 2d 823, 848 (E.D. Mich. 2012) (quoting *Mettler Walloon, L.L.C. v. Melrose Twp.*, 281 Mich. App. 184, 221 (2008)); *see also Wiggins v. City of Burton*, 291 Mich. App. 532, 561 (2011) ("Although it has become commonplace in this state for a plaintiff to assert a request for declaratory relief as a separately labeled cause of action within his or her complaint, this is technically improper because 'declaratory relief is a remedy, not a claim.'"). Second, Garrow may not invoke the unclean-hands doctrine to obtain a declaratory judgment regarding the rightful ownership of the property because she is the party who initially breached the mortgage by failing to make the appropriate loan payments. *See Yuille v. Am. Home Mortg. Servs.*, 483 F. App'x 132, 135 (6th Cir. 2012) (plaintiff could not rely on the unclean-hands doctrine to seek "judicial assistance in avoiding his contractual obligations."). Consequently, declaratory relief is not warranted in this case.

        6.      *Injunctive Relief*

Garrow urges the Court to issue both a TRO and a preliminary injunction to "stay and/or toll the redemption period and enjoin [JPM] from pursuing eviction proceedings . . ." [1, Ex. A at ¶ 109]. A plaintiff seeking injunctive relief must establish: (1) likelihood of success on the merits; (2) irreparable harm in the absence of such relief; (3) that the balance of equities favors his or her position; and (4) that injunctive relief is in the public interest. *Upshaw*, 2015 U.S. Dist. LEXIS 169956, at *16. "Although the four factors are to be balanced, a finding that there is

17

simply no likelihood of success on the merits, or only on a possibility of irreparable harm, is usually fatal." *Id.*

As discussed above, Garrow fails to establish any likelihood of success on her substantive claims.  Moreover, the Court is persuaded by JPM's contention that any irreparable harm to Garrow stems from her own culpability.  This is evidenced by her failure to make the proper loan payments, timely consummate loan modification negotiations with JPM, and redeem the property after the sheriff's sale.  In view of the foregoing, Garrow is not entitled to any form of injunctive relief.

### 7. *Equitable Mortgage*

Finally, Garrow asks the Court "to impose an equitable mortgage" because Michigan law no longer allows her to convert a foreclosure by advertisement into a judicial foreclosure proceeding after the state legislature repealed Mich. Comp. Laws § 600.3205c. [1, Ex. A at ¶ 121].

"A court of equity may impose . . . an equitable mortgage on a parcel of real property when no valid mortgage exists . . ." *Eastbrook Homes, Inc. v. Treasury Dep't*, 296 Mich. App. 336 (2012).  In this case, since a valid mortgage is already in place there is no reason for the Court to impose an equitable mortgage. *See Upshaw*, 2015 U.S. Dist. LEXIS 169956, at *17; *Goodman*, 2015 U.S. Dist. LEXIS 143567, at *14.

As for Garrow's argument that the repeal of Michigan's prior foreclosure by advertisement statute, M.C.L. § 600.3205c, somehow barred her from timely challenging the sheriff's sale, the Court notes that nothing precluded her from filing a lawsuit to stay the sheriff's sale or from challenging the sale's validity after it had already been completed.  In any event, Garrow would not have qualified for relief under former Section 600.3205c because "the sole

remedy [under that statute] for a mortgage holder's failure to follow the loan modification process [was] converting the foreclosure by advertisement to a judicial foreclosure." *Holliday v. Wells Fargo Bank, N.A.*, 569 F. App'x 366, 370 (6th Cir. 2014); *see* Mich. Comp. Laws § 600.3205c(8).   And that remedy was only available where, unlike here, the "foreclosure itself [was] still pending." *Holliday*, F. App'x at 370.   Therefore, Garrow's request for an equitable mortgage should be denied.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that JPM's motion to dismiss the complaint **[5]** be **GRANTED**.


Dated: April 27, 2016                                    s/David R. Grand
Ann Arbor, Michigan                                    DAVID R. GRAND
                                                                    United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).   The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.   *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).   Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.   A

party may respond to another party's objections within 14 days after being served with a copy.

*See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and

should address specifically, and in the same order raised, each issue presented in the objections.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

Dated:  April 27, 2016